C9KMBRAS                        Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                              11 Cr. 12 (RMB)

5   JOHN BRANCACCIO,

6                Defendant.

7   ------------------------------x

8                                           New York, N.Y.
                                            September 20, 2012
9                                           10:00 a.m.

10
    Before:
11
                        HON. RICHARD M. BERMAN,
12
                                            District Judge
13

14                          APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    DANIEL CHUNG
17       Assistant United States Attorney

18  ROBERT RAY
    MADELON GAUTHIER
19       Attorneys for Defendant

20

21

22

23

24

25

C9KMBRAS                          Sentence

1              (Case called)

2              THE COURT:  So, as you know, we are on this morning

3      for sentencing.  And the rules of sentencing changed over the

4      years as a result of Supreme Court decisions and decisions of

5      the Second Circuit Court of Appeals as well, the upshot being

6      that the United States Sentencing Guidelines are no longer

7      mandatory and, instead, sentencing courts are directed to look

8      at a statute that's referred to as 18 United States Code

9      Section 3553(a), which I have done, incidentally, prior to

10     coming on the bench today.  And those factors include the

11     nature and the circumstances of the offense, the history and

12     characteristics of Mr. Brancaccio and the need for the sentence

13     to accomplish certain objectives, which include reflecting the

14     seriousness of the offense.  The offense here, as we will get

15     to in a moment, I'll describe it, but it is a serious one.  We

16     also need to promote respect for the law, to provide a just

17     punishment, to afford adequate deterrence to criminal conduct,

18     to protect the public from further crimes of Mr. Brancaccio, to

19     provide him with needed educational or vocational training,

20     medical care or other correctional treatment in the most

21     effective manner, which is also critically important here in

22     light of his extensive history of abusing drugs.

23             We look at the kinds of sentences available, the kinds

24     of sentence and the sentencing range established in the

25     sentencing guidelines, even though those are no longer

C9KMBRAS                          Sentence

mandatory.  We look at any policy statements issued by the

sentencing commission, which may apply.  We seek to avoid

unwarranted sentence disparities among similarly-situated

defendants, and we also, in an appropriate case, I don't think

this is one of those, seek to provide or need to provide for

restitution.

Just as a heads-up, as you're contemplating your

arguments or presentations, and I am going to give you the

detailed analysis in a second, but I do find, first of all, and

we always with the guidelines analysis that the applicable

guideline range is appropriately stated as 210 to 240 months

based on an offense level of 32 and a criminal history category

of VI.  Actually, the range would go to 262 months, but there

is a statutory maximum, so 240 is the statutory maximum.  So

that range is also the range that is currently reflected in the

plea agreement.

Just by way of background, there was, prior to

reaching this plea agreement, if I remember correctly, there

was another plea agreement which had the range at 188 to 235

months.  Is that the right number?

MR. CHUNG:  That's right, your Honor.

MR. RAY:  Yes, it is, your Honor.

THE COURT:  And that prior plea agreement did not

allow the parties to argue outside the range.  The new plea

agreement or the current applicable plea agreement sets the

C9KMBRAS                          Sentence

1   range at 210 to 240 months but does allow the defense to argue

2   for a sentence lower, for example, than 210 months.

3              MR. RAY:  That's also right.

4              THE COURT:  And also has a heads-up, what my plan is,

5   I meant to say this, I do think that what's called a

6   nonguidelines sentence is appropriate here.  And I think it's

7   appropriate, as you'll see, based on all of the factors at

8   18 -- or several at least of the factors at 18 United States

9   Code Section 3553(a), not any one in particular.  There are a

10  series of issues which, in my mind, warrant a below guidelines

11  sentence which I will come to.

12             There is disagreement between the defense and the

13  government as to whether some of Mr. Brancaccio's prior state

14  sentences should be taken into consideration by the Court in

15  support of accrediting him with prior time served.  Counsel for

16  the defense has indicated that a hearing is not necessary to

17  resolve this issue, and I assume the government feels the same

18  way.  I am not sure.  Personally I think that there is enough

19  information here to resolve the case for sentencing without a

20  hearing, but I don't know what your view is.

21             MR. CHUNG:  Your Honor, the government's position is

22  that it disagrees with the defendant's account of the relevant

23  facts here, but ultimately that that factual dispute really

24  doesn't matter for purposes of the sentencing.

25             THE COURT:  If you do the 18 U.S.C. 3553(a) analysis

C9KMBRAS                          Sentence

1     here are some of the salient facts in my judgment.

2             First of all, Mr. Brancaccio pled guilty on April 26,

3     2012 to Count Two in the indictment, which is a racketeering

4     count, and specifically he acknowledged the following

5     racketeering acts:  Cocaine trafficking, marijuana trafficking,

6     extortion conspiracy, and operating an illegal gambling

7     business or sports betting.  And he pled guilty pursuant to a

8     plea agreement which is dated April 25, 2012.

9             As I said before, in that agreement there is a

10    stipulated offense level of 32, criminal history category of

11    VI, and guideline range of 210 to 240 months.  And the plea

12    agreement further provides, among other things, that the

13    cocaine trafficking involved ten kilograms, marijuana

14    trafficking involved 999 kilograms.  Mr. Brancaccio possessed a

15    firearm in connection with the cocaine trafficking.  The

16    extortionate conduct involved the brandishing and possession of

17    a firearm.  The extortionate conduct involved more than $50,000

18    but less than $250,000.  Mr. Brancaccio committed what we will

19    call the instant offense while he was on parole.

20            As I noted before, this plea agreement also provided

21    that either party may seek a sentence outside the stipulated

22    guideline range pursuant to the factors to be considered at 18

23    United States Code Section 3553(a), and that was a change over

24    the prior proposed plea agreement, and the defense has made

25    such a proposal.  They have sought a sentence outside the

C9KMBRAS                        Sentence

1    stipulated guideline range.

2            Just by way of historical background, I wanted to

3    reference some of the statements that were made and questions

4    asked by me and answers by the defense during the plea

5    allocution.  And at that time Mr. Brancaccio stated, among

6    other things, that he understood that any part that I had in

7    narcotics trafficking or sports betting, no matter how small or

8    large it may be, it is relevant to this indictment and I

9    understand that I am guilty of that, your Honor.

10           And when asked by me, by the Court, So did you engage

11   in cocaine trafficking, he replied, Yes.

12           When asked by me, Did you engage in marijuana

13   trafficking, he replied, Yes.

14           When asked by me, Did you engage in extortion

15   conspiracy, he replied, Yes.

16           And when asked by me whether he engaged in illegal

17   gambling, he also replied yes.  And he also stated that he

18   understood that those activities in some way furthered the

19   enterprise, talking about a RICO enterprise.

20           When asked by me, Did you engage in these activities

21   during the period the late 1980s to in or about 2011, he said

22   Yes, from the late 1980s up to the present time, other than the

23   time I spent in prison.  That was his response.

24           I also asked, Did these activities occur in part in

25   the Southern District of New York, which includes Manhattan,

C9KMBRAS                          Sentence

 1   among other places, and the Bronx, and he said, Yes.

 2          I asked him, Did he engage in those racketeering

 3   activities with other persons described in the indictment as

 4   members of the Gambino crime family?  He answered yes.

 5          And I asked if he knew those activities were illegal,

 6   and he answered, Yes, he did.

 7          And I also asked:  And you engaged in these

 8   racketeering activities through commission, that is to say, by

 9   engaging in the acts which I referred to a few minutes ago of

10   cocaine trafficking, marijuana trafficking, extortion

11   conspiracy, and operating an illegal gambling business, is that

12   right?  And he said, Yes.

13          And then the government posed a question which they

14   asked me to ask and I said, So what the government is asking

15   me, the Court, to ask you, Mr. Brancaccio, which I will do, is

16   whether you understand that by extortion conspiracy is meant

17   the receipt of money from an individual by threat or actual

18   force, and he said, Yes.

19          You can look at the transcript for other question and

20   answer.

21          In the defense submissions dated July 9, July 24, and

22   August 29, 2012, the defense requested that the sentence be

23   within the range of 134 to 164 months and in fact that it be at

24   the bottom of such range, quote, through a substantial

25   sentencing variance taking into account the unusual

C9KMBRAS                    Sentence

circumstances of Mr. Brancaccio's stipulated plea agreement,

his criminal history, his status as a career offender.  That

status is also noted in the presentence investigation report,

and the time previously served on a prior state -- I think the

defense was referring to certain marijuana and assault

convictions, or conduct that is within the ambit of the charge

of RICO enterprise to which he pled guilty.

        The defense also argues that Mr. Brancaccio's assault

and the other predicate racketeering acts to which he pled

guilty are all in furtherance of the jointly undertaken

criminal activity and for relevant conduct purposes it is

immaterial whether the act was charged as part of the

substantive RICO count or as a conspiracy.

        Defense counsel also notes that while Mr. Brancaccio

concededly has a more serious criminal record than that of his

codefendants, the fact that he will be sentenced even under his

own recommendation to more time than a capo in the Gambino

enterprise and the head of a crew speaks volumes as to why a

sentencing variance is necessary and appropriate in order to

fashion a fair and just sentence consistent with 18 U.S.C.

Section 3553(a) that's found in the August 29, 2012 submission

at page 12.

        In its submission filed July 13, 2012, the government

argues that the defendant should be sentenced within the

stipulated guideline range of 210 to 240 months.  The

C9KMBRAS                        Sentence

government also states that with respect to Mr. Brancaccio's

prior drug convictions, the government agrees that the Court

may consider those sentences as related to the instant offense.

Brancaccio has been convicted before this Court of dealing

cocaine and marijuana over his many years as a Gambino family

associate, and the government agrees that his prior drug

dealing was similarly related to the Gambino family.  Yet the

government also contends that to the extent the Court does give

Mr. Brancaccio some credit for time served in his prior drug

sentences, and the government believes that benefit should only

be a few months, certainly less than 20 months, then that

should be a basis not to sentence Brancaccio below the bottom

of the guideline range but rather sentence him below the high

end of that range.

        So I think what the government is saying is if there

is any reduction based on the marijuana offenses, it should be

20 months or less subtracted from 240 rather than from 210.  Is

that your position?

        MR. CHUNG:  That's correct, your Honor.

        THE COURT:  In its submission dated July 30, 2012, the

government states that the defendant has not provided the Court

with an accurate factual record to support his claim that the

1993 assault is related to the crimes of conviction here.

Additionally, the government states that even if the assault

were related to the Gambino family, defendant is not entitled

C9KMBRAS                          Sentence

1    to a sentencing reduction here because he has not pled to any

2    actual crime here that relates to the assault.

3            This is the government still arguing this.  It is

4    crucial to note that Brancaccio has pled guilty here only to

5    the substantive racketeering charge, Count Two, and not to the

6    broadly-framed racketeering conspiracy charged in Count One.

7    That is quite correct as a legal matter.  Mr. Brancaccio did

8    not plead to Count One of the conspiracy but rather to

9    substantive racketeering as set forth in Count Two.

10           So there is one provision of the sentencing guidelines

11   that one needs to refer to, and that is United States

12   Sentencing Guidelines 2E1.1, application note 4 states that:

13   Certain conduct may be charged in the count of conviction as

14   part of a pattern of racketeering activity, even though the

15   defendant has previously been sentenced for that conduct.

16   Where such previously-imposed sentence results from a

17   conviction prior to the last overt act of the instant sentence,

18   treat as a prior sentence under Section 4A1.2(a)(1) and not as

19   part of the instant offense.  This treatment is designed to

20   produce a result consistent with the distinction between the

21   instant offense and the criminal history found throughout the

22   guidelines.

23           I think the point of this section is, and I think

24   that's how the 210 to 240 came about, is that those prior

25   convictions and sentences are treated here as criminal history

1    and not necessarily as part of the instant offense.  Is that

2    the way you got to 210 to 240?

3                MR. CHUNG:  That's correct, your Honor.

4                MR. RAY:  I think that's right.  But the flip side of

5    it is that they could have been, except for the operation of

6    this application note.  Of course, as we point out in our

7    further sentencing submissions, at least the guidelines

8    contemplate in a pre-Booker world that there are situations

9    where that may produce what is referred to as an anomalous

10   result which otherwise may constitute grounds for a downward

11   departure.  We are obviously not arguing for that here because,

12   one, we are precluded from doing so under the plea agreement.

13   Because also now we are in a post-Booker world, our view, and I

14   think the Court accepts this approach, is that that can be

15   dealt with by way of the 3553(a) sentencing factors.

16               THE COURT:  Which is my intention, as I indicated.

17               MR. RAY:  Thank you.

18               THE COURT:  I don't think we need to reach the

19   conclusion, as I say, anomalous or not, in the sense that

20   counsel has just I think accurately and succinctly argued and

21   based on the remarks that I made earlier on.

22               There is another provision that one should look at,

23   which is United States Sentencing Guidelines 3D1.4(c).  And it

24   notes that when a less serious offense is grouped and

25   disregarded, as is true here, it may provide a reason for

sentencing at the higher end of the sentencing range for the

applicable offense level.  And the reference is United States

Sentencing Guidelines 3D1.4(c).  And I'm noting further that in

this case Mr. Brancaccio received no increase for the

racketeering act of operating an illegal gambling business or

sports betting.  So that's why I'm referencing this guidelines

provision.

        Further analysis under 18 U.S.C. Section 3553(a)

yields the following conclusions:  Mr. Brancaccio is 45.  He

has one child who is 11 years of age.  He explains that he has

a GED.  He also clearly brings to my attention that he has a

long-standing substance abuse history and problem involving

marijuana, cocaine, Xanax, and alcohol.

        According to the presentence report, when

Mr. Brancaccio was 12 he was sent to live with his father.  His

parents had separated, because he was already using drugs and

not attending school.  After a period of approximately four

months he went to live with his uncle and by the age of 14 he

was returned to live with his mother.

        According to the presentence report, further,

Mr. Brancaccio abused alcohol since the age of eight until the

time of his arrest.  He smoked marijuana, it seems, daily from

the age of 10 to the time of his arrest.  He took Xanax daily

from the age of 25 until time of his arrest.  And he snorted

cocaine socially at least three times per month from the age of

1    22 to 43.  So he has a very substantial drug history which is

2    also going to factor into my nonguidelines sentence.

3           He acknowledges his extensive history of substance

4    abuse.  He also reveals that he participated in several

5    different drug programs while in prison and while out of

6    custody.  He also has an extensive prior criminal history, and

7    that includes convictions for attempted sale of marijuana in

8    the fourth degree, criminal sale of marijuana in the fourth

9    degree, disorderly conduct, in some instances more than one

10   occasion, misdemeanor marijuana possession, assault with intent

11   to cause injury with a weapon, criminal possession of marijuana

12   in the fourth degree, criminal sale of a controlled substance

13   in the fifth degree.

14          Just for your background and information, the

15   presentence report includes three drug-related convictions

16   between 1986 and 1990 that do not appear to have been reflected

17   in the plea agreement.

18          He also, Mr. Brancaccio does acknowledge that he was

19   on probation or parole at the time of the instant offenses.  He

20   also has some medical conditions, including diabetes, high

21   blood pressure, and high cholesterol, and has experienced

22   depression in the past.

23          He has also had employment in the past as a member of

24   the Construction and General Building Laborers Local 779, and

25   he's been employed by Odyssey Construction Corp., Plaza

1    Construction Corp., JAK Construction, Northeast Underlayments,

2    Pala Construction Corp., Iannelli Construction Company, Linear

3    Contracting, Inc., Five Brothers, Inc., and Richter & Ratner

4    Contracting Corp.

5          The defense says that while Mr. Brancaccio

6    acknowledges that his status as a career offender and his prior

7    record warrant an enhanced sentence, his relative possession as

8    a mere associate of the enterprise should only carry so far to

9    a sentence that is fair and reasonable and not greater than

10   necessary to account for his relative role in the enterprise

11   dating back over 25 years.

12         I'm including everything I'm referencing in the

13   context as factors to be considered under 3553(a).  I am

14   including this one as well.  This somewhat relates to the issue

15   in the law called the parity, so to speak, of codefendants,

16   that there shouldn't be a big disparity.

17         The defense also asked the Court to consider the fact

18   that defendant had major substance abuse problems.  We

19   discussed those already and I am considering those as well,

20   which he tried to correct.  And as soon as completing a drug

21   treatment program following release from an earlier

22   imprisonment, he became a member of the Construction and

23   General Building Laborers Local 1979.  I just referred to that.

24   And he worked legitimate construction jobs from 2008 to the

25   time of his arrest.

C9KMBRAS                          Sentence

1          The government argues that by contrast that the

2     defendant has not been deterred by prior prison sentences.   The

3     government notes that this is the defendant's ninth criminal

4     conviction and his third felony conviction.   The government

5     also states that when law enforcement agents entered

6     Brancaccio's home to arrest him, they found the following:   80

7     grams of cocaine, small quantities of marijuana, digital

8     scales, a grinder, glassine bags, a Winchester 12-gauge

9     shotgun, shotgun shells, a loaded .40 caliber Glock handgun,

10    and a rubber-handled machete.   According to defense counsel,

11    most of these items were found in the bedroom of

12    Mr. Brancaccio's brother, Marco, quote, admittedly the shotgun

13    shells, handgun, and machete all belonged to Mr. Brancaccio.

14         Just by way of further background, it appears that to

15    me, based on the submissions, that Mr. Brancaccio spent

16    approximately 24 months in state custody on prior drug

17    offenses.   That is an offense from September 2005 for which he

18    appears to have been in custody from March 2006 to June 2007,

19    roughly 15 months, and also for a September 2002 criminal

20    possession of marijuana in which he appears to have been in

21    custody for approximately nine months.

22         The assault, the prior assault that the defense

23    discusses, I think he was in custody for approximately 54

24    months.   You could correct me if I'm wrong, but I think that's

25    approximately the number.   The government says it isn't proven,

1    but roughly I think that's about the right number.

2              MR. RAY:  I think roughly that's right.  We were still

3    not entirely sure, but anywhere from 54 to 56 months on the one

4    and then the 24 months on the other.  We calculated the total

5    at 77 at one point and 76.  I don't think we are entirely sure

6    down to the month, but we are in the right neighborhood, and I

7    don't think for sentencing purposes it's going to make a

8    material difference.

9              THE COURT:  I agree with that.

10             I have also received and reviewed letters from

11   Mr. Brancaccio, from his son, from his mother.

12             MR. RAY:  Your Honor, may I just note, and I should do

13   so now, that the defendant's mother is present in the courtroom

14   behind me, as is his son and his son's mother.

15             THE COURT:  They are certainly welcome and I have

16   letters, as I say, family letters that I have received.

17             I also received a letter from his uncle or two

18   letters, actually, who mentions that Mr. Brancaccio and his

19   family would be welcome to live with him in Florida

20   postincarceration, and a job may be in the offing, also, down

21   the road there.

22             He also mentions that the system has failed

23   Mr. Brancaccio as a child.  I think one could debate that, but

24   I understand what he means by that.  It means that he had a

25   difficult childhood and I think he really means that perhaps he

1    means that someone didn't reach out to Mr. Brancaccio to help.

2            In his letter to the Court, which I received September

3    13, 2012, Mr. Brancaccio states that he's not an associate of

4    the Gambino family but he acknowledges that in the past he has

5    had dealings with associates of the Gambino family.  He also

6    says that he is very sorry for what he has done.  He only wants

7    to take care of his family, become gainfully employed once

8    again, and remain law abiding and live in peace.  He asks the

9    Court to sentence him to 120 months followed by 60 months of

10   house arrest.  And in a letter dated July 5, 2012, he advised

11   me that he is trying to better himself as a person while

12   incarcerated so that this cycle can be broken, and he cannot

13   only be a better person but a better father to his son.  The

14   Court notes that in the presentence report he advised probation

15   that he committed the instant offense for monetary gain.

16           As I say, I have considered all of this as factors

17   under 18 United States Code Section 3553(a).  We do have to

18   reflect in this sentence the seriousness of the offense.  We

19   also have to reflect Mr. Brancaccio's history, personal

20   history, both the criminal history but also the drug history

21   and among the other factors that I've already mentioned.  We

22   have to promote respect for the law, provide a just punishment,

23   afford adequate deterrence to criminal conduct.  Deterrence

24   historically has not seemed to work with Mr. Brancaccio, but I

25   still think there are general and specific deterrence issues

C9KMBRAS                          Sentence

that we need to address.  We have to protect the public from

further crimes and provide him with the appropriate medical

care and, in particular, therapeutic counseling and drug and

alcohol treatment.

        I've also reviewed the presentence investigation

report, dated July 19, 2012, with the addendum and the

sentencing recommendation contained therein, and also let's go

over the correspondence again from Mr. Ray:  July 9, July 24,

two submissions dated August 29; from the government, July 13,

July 30, and along with the letters from Mr. Brancaccio and his

family members.

        Did I miss anything?  Was there anything else that you

wanted me to consider that I didn't?

        MR. CHUNG:  No, your Honor.  That's all.

        MR. RAY:  No, your Honor.  I think that's it.  We did

obviously file objections to the presentence report that were

in writing, and those objections were addressed in the final

presentence report and your Honor has the benefit, I believe,

both of what our objections are and also how the probation

department responded to those objections, and I suppose the

most significant one, of course, is that we make an argument

with regard to the basis of what our sentencing position would

be, which was a variance.  And the probation department or

probation office, as is their practice, has deferred to your

Honor that particular issue.  Other than that, no, that's the

C9KMBRAS                         Sentence

1    entirety of our sentencing submission.

2               THE COURT:  Mr. Ray, have you had the opportunity to

3    read and discuss the presentence investigation report along

4    with the addendum and sentencing recommendation and these other

5    sentencing submissions with Mr. Brancaccio?

6               MR. RAY:  Yes, your Honor.  And I would note probably

7    more so than any other client that I have ever had.  In other

8    words, Mr. Brancaccio has been involved in that process both

9    prior to the plea, subsequent to the plea, and all during the

10   period of time from that point forward until today at every

11   step of the way.  So we have reviewed that presentence report

12   in depth paragraph by paragraph.  I have reviewed all of the

13   things that he has submitted to your Honor.  And he has

14   reviewed that which I have submitted on his behalf to this

15   Court by way of the arguments presented in support of our

16   position for a sentencing variance.

17              THE COURT:  Mr. Brancaccio, you went over those

18   materials with your attorney, Mr. Ray, as he just described?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  Do either of you have remaining objections

21   to the presentence report apart from those that are reflected

22   in the presentence report?

23              MR. RAY:  No, your Honor.  I think, as you can

24   probably tell, we have made a number of them, but I believe all

25   of that has been aired out either within the confines of our

C9KMBRAS                          Sentence

1    objections specifically to the report and addressed, and also

2    back and forth before your Honor in the sentencing submissions

3    between the defendant and the government.

4             So, no, outside of that, there are no others.

5             THE COURT:  Any further objections from you,

6    Mr. Brancaccio?

7             THE DEFENDANT:  No, sir.

8             THE COURT:  How about from the government?

9             MR. CHUNG:  None, your Honor.

10            THE COURT:  I return the presentence report to

11   probation, which is the common practice.  And now I'm hoping to

12   hear from Mr. Ray, Mr. Brancaccio, and Mr. Chung, if they wish

13   to be heard.

14            MR. RAY:  Your Honor, let me start, I think, with a

15   few principles.

16            One, I want to address the last point your Honor made

17   first.  I was at yesterday's sentencing of Mr. Corozzo, which,

18   as you know, is a sentencing that involved the conciliary of

19   the Gambino organized crime family and he was sentenced

20   ultimately by this Court to 63 months which, for reasons I will

21   get into, has some bearing on this case.

22            As your Honor knows, when you start to make arguments

23   about one particular factor under the sentencing guidelines,

24   you are always subject to the argument in response, well,

25   that's one factor, and your Honor has correctly pointed out

1    that it is a totality of the circumstances approach, and we

2    agree with that.

3         THE COURT:  And the totality clearly with respect to

4    Mr. Corozzo is a different totality than with respect to

5    Mr. Brancaccio.

6         MR. RAY:  Yes, even on that particular factor.  The

7    minute you start to argue the need to avoid unwarranted

8    sentencing disparity among defendants with similar records who

9    have been found guilty of similar conduct, you always run up

10   against any time you try to make that argument, well, all

11   right, that's fine, but do we have someone who has a similar

12   record and how similar is that record?  Have they been found

13   guilty of similar conduct?  How similar is that conduct?  And

14   of course, this provision not only applies with regard to

15   defendants in a case, but, obviously, presumably with regard to

16   sentences of defendants regarding similar conduct and similar

17   records across the country.

18        THE COURT:  I agree with that.  I think that the other

19   defendants in this case, certainly I'm aware of my other

20   sentences for them, and I'm aware of the requirement to avoid

21   unwarranted disparities as well.  I have factored all of that

22   in, I think, and will in today's sentence.

23        MR. RAY:  We appreciate that and we have, as I think

24   you have seen from our sentencing submissions, taken I think

25   great pains to remind the Court of the other sentences in the

1    case, not because they are directly relevant, but they are of

2    some relevance.  And they are particularly, as I think we have

3    tried to suggest, and I think this is where I am going to now

4    have an argument that I hope varies a little bit from our

5    sentencing submissions, because there is no point in repeating

6    what we have already said, you have that and I can tell by your

7    Honor's preliminary comments that you have all of those things

8    in mind.  So there is no point in repeating them.

9            Let me say this.  Look.  The sentencing guidelines

10   have a couple of principles involved that I think bear mention.

11   The first is the following:  Someone who is a career offender,

12   and we acknowledge that he is, generally warrants, under a

13   principle of the guidelines, a sentence at or near the

14   statutory maximum.  If the general principle applies, guess

15   what, we have hit the guideline range by virtue of the

16   stipulations, which we don't disagree with and we are not

17   arguing against, that put this case at 210 to 240, capped at

18   the statutory maximum.  If this were just a straight simple

19   case of trying to figure out where a career offender gets

20   sentenced on the count of conviction, that's a general

21   principle that applies and we have hit here.

22           But I think there are some things that need to be

23   considered and I think your Honor already has recognized that

24   they warrant consideration, as your Honor has agreed to do a

25   variance from what otherwise would be the recommended guideline

1   range.  What are those other principles?  And I think they are

2   worth taking account of beyond what we have already argued.

3          The first is that RICO cases, under the guidelines,

4   have a way of ratcheting conduct up in a hurry to very, very

5   steep offense levels.  I'll talk about Mr. Brancaccio's

6   criminal history in a moment.  Let's just deal with one thing

7   at a time, the offense level calculation.

8          As a matter of plea negotiations, in a RICO case,

9   given another aspect of the guidelines that's significant and

10  has a significant effect on where you land, and that's relevant

11  conduct.  Mr. Brancaccio admittedly is responsible and

12  accountable for not only what he actually did, but also for the

13  conduct of others that is either reasonably foreseeable to him

14  or part of the same course of conduct or common scheme or plan

15  of what it is he did do.

16         And in that regard there is a limit to how much

17  leverage a defendant has facing a prosecution as Mr. Brancaccio

18  was of RICO conspiracy allegedly from the early 1980s to the

19  present, plus there is no getting around it, so it should be

20  acknowledged, the fact that guns were found in his home, and he

21  was facing a consecutive seven-year mandatory term, in a RICO

22  case, where he has to eat, so to speak, relevant conduct for

23  the entire enterprise, we have the situation in this case where

24  there was a stipulation for over ten kilos of cocaine.

25         Now, we are not having a Fatico hearing here and I am

1   not here to suggest or contest that the government wouldn't be

2   able to prove at a Fatico hearing that the Gambino organized

3   crime family was involved in more than ten kilos of cocaine

4   from the early 1980s to the present.  It would be a ridiculous

5   hearing for me to have.  It wouldn't be much of a factual issue

6   and frankly wouldn't help my client.

7           So, you know, one thing should be said.

8   Mr. Brancaccio came before your Honor initially and rejected a

9   188 to 235 month plea deal because it didn't allow him to make

10  a variance argument.  As a result, he ended up having to accept

11  a ratcheting up of his relevant conduct, which the government

12  certainly is free to do because they have the ability to prove

13  that at a sentencing hearing.  Not because that's what

14  Mr. Brancaccio did, but because it was at least reasonably

15  foreseeable to him as the result of his acknowledged

16  participation in the affairs of the enterprise, that if

17  somebody else did it, he is legally accountable for it.  We

18  don't have the leverage of saying, I'm sorry, government, we

19  are rejecting that because you can't prove that.

20          And even if I could say, why are you doing this,

21  because Mr. Brancaccio didn't do that himself, it's clear from

22  the conduct here and his own criminal history that he is not a

23  kilogram weight, wholesale distributor of narcotics for the

24  mob.  That is not this case.  And he's accountable for those

25  larger amounts because it is relevant conduct reasonably

C9KMBRAS                          Sentence

1   foreseeable to him as a result of his limited participation in

2   that enterprise.

3         And I think that's a reason, and I think it is one

4   that only 3553(a) can serve to correct of making the

5   distinction between that which he's personally accountable for,

6   and I think your Honor sees the record and his past history.

7   What was he doing?  He was using marijuana.  He was using

8   cocaine and abusing both drugs, those drugs, other drugs, and

9   alcohol.  And he was distributing at a retail level.

10  Admittedly, those are distribution activities of those two

11  narcotics, which form predicate acts in this enterprise, that

12  he pleaded guilty to and acknowledged.  But he was doing so in

13  order to make money in order to feed that habit.

14        So to begin where your Honor ended, unlike in the

15  Corozzo case, I've talked now about the fact that he's not a

16  made member of the Gambino family.  At best he's an associate,

17  even by the government's acknowledgement.  He doesn't have

18  operational responsibility within the mob.  He doesn't have a

19  supervisory position.  He's not a made member.  He does have a

20  history.  But what does that history show?  That history shows,

21  I think, although the past is reflected based upon his record

22  in your Honor's words, deterrence hasn't seemed to work, I

23  think it's a safe bet to believe that at this point in his

24  life, as a 45-year-old man with an 11-year-old son, the letters

25  that have been submitted, the gainful employment that he has

1    had in the most recent relevant past, and the fact that there

2    are family members that I think now are finally prepared to

3    step up and help him, that I think that when he's done --

4    nobody is contending here, even by the defendant himself, that

5    he's not going to get a sentence here that's less than 120

6    months.  But the fact remains that in this 22-defendant case,

7    there are only going to be apparently three people and possibly

8    four who are going to have sentences that are in excess of

9    that.  Now, he stands before the Court understanding that

10   that's the sentence that's going to be imposed on him largely

11   as a result of his prior criminal record.  Of course, that's

12   appropriate.

13          But the question is, in the distance between a 20-year

14   statutory maximum and in the neighborhood of a ten-year

15   sentence, where within those two pretty far disparate sentences

16   is it appropriate to sentence Mr. Brancaccio?  We submit that

17   it is much closer or should be much closer to the ten-year term

18   of imprisonment rather than the 20-year term of imprisonment.

19   We get there through a number of different arguments that your

20   Honor is going to take account of that are included within the

21   factors, the principal one of which we have argued in the

22   papers and I won't rehash it.

23          But it is this whole question of what credit should be

24   given, if any, for his previous sentences that were served in

25   connection with state cases that are arguably within the ambit

1   of the conspiracy.  The government seems to concede the point

2   with regards to the narcotics trafficking activity, which is

3   about approximately, as your Honor has indicated, about 24

4   months of that, 77-month period of time, and seemed to contest

5   it with regard to the other 50 something months relative to the

6   prior assault conviction.

7           We have made the argument that that assault is not

8   unrelated to or not of a piece far beyond that which he did

9   acknowledge, which was the extortion aspect or predicate act.

10  And indeed there are discussions both with regard to that

11  extortion that was charged and also the assault that wasn't on

12  the government's own wiretap recorded conversations that we

13  have cited to and quoted from in our sentencing submissions.

14          THE COURT:  I referred to those approximate time

15  periods.  I just want to caution that ultimately my sentence is

16  not a mathematical sentence.  You shouldn't try and read into

17  it that, oh, he came down from the guideline range by X months

18  because of X or Y.  It's not X or Y.  It's all of these

19  factors.  So it is all of 18 U.S.C. factors, my intention is,

20  come up with the reduction below 210, but I don't think you can

21  find mathematically how I arrive at a particular number.  This

22  is more art than science.  As I say, looking into his history

23  and looking at the criminal history and personal history, all

24  the factors with respect to deterrence and the seriousness of

25  the offense, what's happened in the past, I'm trying to put it

1    all in the mix.

2            MR. RAY:  I think you can tell from my argument that I

3    have not tried to stick too precisely to specific requests

4    about how much credit to be given.  I think it is a window on

5    trying to get at who is this defendant, what is his history,

6    and what did he actually do in connection with the offense of

7    conviction.

8            THE COURT:  Right.  I get it.

9            MR. RAY:  Let me turn to that.  You know, to

10   paraphrase a famous argument in another context, the problem

11   with the operation of the RICO guidelines is that if you add an

12   offense level or two here and an offense level or two there and

13   an offense level or two in another place, pretty soon you add

14   up to a whole lot of time.

15           But let's look at some of those factors.  You know,

16   one of them is the operation of the multiple count rules.  It's

17   not just the narcotics trafficking activity.  I made my

18   arguments with regard to that.  While he is accountable for

19   relevant conduct of the activities of others, I think a more

20   close examination of what Mr. Brancaccio actually did is

21   warranted and provides grounds under the 3553(a) factors to

22   take that into consideration, and I know your Honor will.

23           Second, with regard to the extortion conspiracy, there

24   is an adjustment for two things that obviously have a material

25   impact.  One is that the amount of the debt involved was over

C9KMBRAS                    Sentence

1    $50,000, which we had to concede was so because that's

2    apparently in fact what it was.  However, as we have pointed

3    out, Mr. Brancaccio's role was in order to secure a compromise

4    of that debt that was in the neighborhood of approximately

5    $35,000.

6              If you are talking about actually what it is that he

7    did, we are stuck in this position that relevant conduct means

8    we have to be accountable for the whole thing, but what was

9    Mr. Brancaccio's involvement?  It didn't warrant the bigger

10   enhancement, frankly, because of the fact that he was involved

11   in a compromise of that debt.

12             Second point, and it's reflected on the recordings,

13   the government's position with regard to the use and

14   brandishing of a weapon in connection with that extortion is

15   based upon a recorded conversation not of Mr. Brancaccio but of

16   apparently of somebody else, Mr. Labarca, who was talking to

17   another person who was the cooperating witness in this case

18   about a conversation that Labarca had with another person who

19   apparently was present.  Well, Mr. Labarca wasn't present and

20   the person that he was speaking to wasn't present when it

21   happened and I can tell you, from Mr. Brancaccio, that he

22   acknowledges that he threatened this person.  So threats of

23   violence were used and he is being sentenced as a result of

24   what happened.  But he did not use a weapon.

25             Now, again, under relevant conduct principles, the

C9KMBRAS                    Sentence

1    fact that other people were involved in this extortion who may

2    have done so is something, of course, that would be reasonably

3    foreseeable to him as the result of the fact of his willingness

4    to use threats of violence.  But, again, there is an

5    enhancement there for a weapon that he didn't use.

6            Again, what I'm asking your Honor to take into

7    consideration is that the ratcheting up of these accumulated

8    adjustments by virtue of your participation in an enterprise

9    that stretches back to the early 1980s has a material effect.

10   We are not contending that that effect shouldn't be given

11   consideration, as I'm sure the government will argue.  I'm just

12   saying they need to place that in context.  That's what I'm

13   trying to do.

14           THE COURT:  I get it.

15           MR. RAY:  I think, further, now I will turn to his

16   criminal record, there are aspects of the operation of a plea

17   to a RICO enterprise that encompasses conduct over a period of

18   25 years that has an effect on what's counted and what's not

19   counted.  I mean, one of the prior convictions that we are

20   talking about is this 1994 conviction for assault which

21   apparently occurred in '93.  That's more than 18 years old.

22   And the second one is a narcotics conviction in 2005, which, of

23   course, is seven years old.

24           And one of the things that either by way of either the

25   career offender calculation, which those two would include, but

1    remember a career offender calculation on its own, without the

2    enhancements that come as the result of relevant conduct for a

3    narcotics trafficking, would have only resulted in a career

4    offender sentence of 151 to 188 months.

5           And Mr. Brancaccio also has, which counts for criminal

6    history points purposes, a 2002 criminal sale of marijuana

7    conviction that resulted, as your Honor specified, in nine

8    months of imprisonment.  It was a possession case rather than a

9    sale case since it was a misdemeanor.  In any event, that 2002

10   conviction is, of course, now ten years old.

11          So what I'm asking your Honor to reflect is, on the

12   one hand, you can say that Mr. Brancaccio has a history of

13   criminal activity, but largely, on the other hand, as a result

14   of the fact that he has a drug problem, and then while it is a

15   lengthy period of time, that lengthy period of time is being

16   picked up and considered in a case because of the way in which

17   the case is charged that encompasses an awful lot of conduct

18   that has nothing to do with Mr. Brancaccio but is in fact an

19   enterprise, i.e., the Gambino crime family that is charged back

20   to the early 1980s, when my client was a teenager.

21          I think some perspective on the operation of the RICO

22   guidelines or the sentencing guidelines in a RICO case is

23   important because then I think you can very quickly see how all

24   these little things come together to result in a sentence that

25   is, in the way which we have argued it, excessive under the

1    circumstances, we believe, and disproportionate.

2            There are many different ways to get at, okay, what

3    does that mean and how far varied from 210 to 240 should your

4    Honor go?  I think the important point to know, and I think

5    Mr. Brancaccio will speak to this directly, because this is

6    more his province than mine, I think your Honor has to weigh

7    this very important question about whether or not in attempting

8    to arrive at an appropriate sentence and accounting for both

9    specific and general deterrence what kind of future there is

10   for Mr. Brancaccio, taking account what it is that he has done,

11   what it is he has acknowledged, and what it is is in store for

12   him in the future.

13           I think in this case, for as long as I have known him,

14   which is back to November of last year, he has made a concerted

15   effort to truly accept responsibility for that which he did.

16   And when things varied from that, as your Honor saw, he was

17   pretty adamant about not accepting anything further than that.

18   Indeed, it went so far as an attempt to fire me and replace me,

19   a successful attempt to reject the government's existing plea

20   offer because it didn't allow for a variance argument.

21           On penalty of risk of going to trial, rejecting a

22   global plea offer that potentially jeopardized the negotiated

23   resolutions of some of his codefendants, and then, finally,

24   after he had entered a plea, I think it's fair to say -- I

25   guess I can say without violating the privilege he had to trust

1    me that withdrawal of his guilty plea was not a good idea,

2    something that I think was fair to say was difficult for him to

3    accept.  And that's not, by any means, an attempt to leverage

4    your Honor into a sentence.  That's not what I mean.  What I'm

5    saying --

6              THE COURT:  I get it.  I was there for all of those

7    events.

8              MR. RAY:  I am just trying to remind the Court of that

9    because I know there has been a lot of proceedings and your

10   Honor has a lot of defendants before you in this case, and I

11   appreciate that.

12             Anyway, I think Mr. Brancaccio will speak to that in a

13   moment as well.  I just wanted to remind the Court of those

14   things.  Sometimes, not always, but many times it is true that

15   when somebody screams pretty loudly about trying to communicate

16   how far they are willing to go, but also how far they are not

17   willing to go, when faced with something as serious as this,

18   it's worth listening because often, in my experience, they have

19   a point, and I think Mr. Brancaccio does have a point.  I do

20   think that a fair and proportionate and just sentence in this

21   case, mindful of his relative role in the offense and

22   understanding that he is accepting responsibility for an awful

23   lot of relevant conduct, relevant offense conduct, that he

24   wasn't personally responsible.

25             THE COURT:  I got it.  You've been over that.

1            MR. RAY:  We think, under those circumstances, and

2    there are a number of ways to get at it, that a sentence far

3    closer to a ten-year sentence is appropriate than the 20-year

4    sentence.

5            THE COURT:  Your submission, as I mentioned before,

6    suggested a range of 134 to 164.  I know Mr. Brancaccio has

7    suggested a lower range.

8            MR. RAY:  Yes.

9            THE COURT:  I'm familiar with all of that.  I think I

10   reflected that earlier in today's proceeding.

11           MR. RAY:  That 134 calculation, again, understanding

12   that no one could be entirely precise here, was simply a

13   reduction based upon crediting him for the approximately 76

14   months of time he served on those previous state sentences.

15           THE COURT:  I got it.

16           MR. RAY:  That's it.  Thank you.

17           THE COURT:  Mr. Brancaccio, would you like to be

18   heard?

19           THE DEFENDANT:  Yes, sir, your Honor.

20           First, I'd like to say that I take full responsibility

21   for the things that I have done, and I'm very sorry to the

22   Court, to society, to my family.  I can stand here and tell you

23   that I've done more drugs ever than I ever sold, but who is to

24   believe what I said.  As the government said, my record speaks

25   for itself.  I was arrested for $10 bags of marijuana, $20 bags

C9KMBRAS                    Sentence

1   of cocaine, and a pound of marijuana.  I'm guilty of the things

2   I have done.  But the amount of drugs I had to cop out to, to

3   me, it's just outrageous.  Like I said, I accept responsibility

4   for the things that I have done.  It's just hard to understand

5   why I have to accept 210 months.

6           I've done everything I could to better myself while I

7   was in prison here, and I am going to continue to do what I can

8   do.  Thank you.

9           THE COURT:  I would say that the key to your future is

10  what you do do.  I think you have unresolved big issues

11  involving a lifetime of drug and alcohol abuse.  I don't know.

12  I'm certain it's not easy, and you've been in programs before.

13  But unless you take care of all of that and unless -- I think

14  there are mental health issues that go along with that that

15  also need to be addressed.  Like I said, this is not a

16  directive because I know how hard this is for people, but

17  unless you get a hold of those issues in a really meaningful

18  way, whether you do or you don't, your future success rides on

19  that, in my opinion.

20          Mr. Chung.

21          MR. CHUNG:  Your Honor, first I'd like to comment on

22  defense counsel's characterization --

23          THE COURT:  Just one other thought.  This is a

24  personal observation.  It won't be helpful, in my opinion, to

25  view yourself as the victim.  One of the letters I think maybe

1   from your uncle suggests -- I think it's from your uncle, I am

2   not sure who said it, but it doesn't matter.  It's very common,

3   incidentally, in sentencing, that comes up.  And it is true.

4   Maybe you had a bad deal, so to speak, and historically tough

5   time as a child.  But the key to success to getting over this

6   victimization.  And it's also true I think with respect to your

7   plea agreement and the guideline range.  We all know how it

8   came about to be 210 to 240, and it is.  I think that's an

9   accurate statement legally of what the guideline range should

10   be.  That's just off the cuff.  I think you got to get beyond

11   being a victim and figure out how you can go forward.

12          Mr. Chung.

13          MR. CHUNG:  Your Honor, first I want to comment on

14   defense counsel's characterization of the offense conduct here

15   as it's encapsulated by the plea agreement.

16          With respect to the drug trafficking, your Honor, the

17   defendant wasn't just a retail dealer who sold the dime bags on

18   the street.  Since the 1980s, since the beginning of his drug

19   dealing career, yes, he did sell drugs on the street regularly,

20   but he also dealt and assisted other associates and members of

21   the Gambino organized crime family in Queens to distribute and

22   to bring in large kilogram quantities of cocaine and marijuana.

23   So while he may not have personally sold kilogram quantities of

24   drugs, he was an integral part in assisting the Gambino

25   organization's drug dealing activities.  The same goes with

1    respect to the extortion conspiracy, your Honor.

2            Our position, I think it's established by the very

3    tape of Todd Labarca that Mr. Ray pointed to, is that the

4    defendant in this particular extortion conspiracy in 2009 was

5    the one who threatened the victim with the gun.  He pointed the

6    gun at the victim, not someone else.  And that's the latest in

7    a series of violent acts by the defendant, including that 1993

8    shooting assault.

9            I believe we have to correct sort of the

10   characterization of the defense conduct.  He is an associate.

11   He is not a made member of the Gambino organized crime family,

12   but he is not some peripheral on-and-off player.  He was

13   integral to the operation, including as recently in 2009, that

14   extortion conspiracy.

15           Now, with respect to the defendant's prior convictions

16   for the 1993 assault and his prior drug convictions and how

17   they figure into the 3553 analysis, the defendant sort of

18   frames those convictions as mitigating factors, that they

19   should somehow figure into a discount from the applicable

20   guidelines range of 210 to 240 months.  We believe, we submit

21   to the contrary that they are aggravating factors.

22           He served about 52 to 54 months' imprisonment for that

23   shooting assault in 1993.  That very long sentence, obviously,

24   did nothing to deter the defendant from committing future

25   violent crimes as recently as 2009, pointing a firearm at the

C9KMBRAS                      Sentence

1    extortion victim.  It did nothing to deter him from continuing

2    his drug dealing to possessing a shotgun and another firearm

3    and drugs, even at the time of his arrest.

4           With respect to his drug convictions, your Honor, some

5    of those sentences were more substantial than others, but in

6    the aggregate they did nothing to deter the defendant from

7    continuing his drug dealing up to the day of his arrest, when

8    he was caught with all kinds of drug paraphernalia, as well as

9    a substantial quantity of cocaine and some bags of marijuana.

10          So rather than a mitigating factor, those prior

11   substantial sentences by themselves and in the aggregate are

12   aggravating factors as they apply to a number of 3553 action

13   factors, most pointedly towards specific and general

14   deterrence, because they have done nothing to deter him.

15          Second, with respect to the nature and circumstances

16   of the offense, it's specifically that those past convictions

17   basically inform what he's done more recently with respect to

18   the extortion conspiracy in 2009, the recent drug dealing.

19   They also go towards his personal background, your Honor.  Your

20   Honor mentioned that there are two sides to the personal

21   background of 3553 factors, the defendant's criminal history as

22   well as other parts of his background, including his substance

23   abuse and his upbringing.

24          I think there is a third element to that personal

25   background 3553(a) factor and that is rung throughout the

1    sentencings in this case, and that is the defendant's lifelong

2    commitment to crime and specifically to violent crime.  We

3    quoted from one of the tapes in our sentencing submission that

4    most recently the defense was overheard on a tape speaking to a

5    cooperating witness how he was disappointed, he was

6    dissatisfied that made members of the mob with whom he was

7    associated or paying up to weren't violent enough.  They

8    weren't violent enough.  They weren't enforcing the mob's

9    edicts or their power enough.  That's a commitment to a life of

10   crime and it's demonstrated by his history.  I think he spent

11   pretty much the majority, the overwhelming majority of his

12   adult life serving some sort of criminal sentence, and he has

13   demonstrated up to the time of his arrest.  That's just a third

14   prong of the personal background, your Honor.

15          So while your Honor has previewed for the parties that

16   the Court intends to impose a nonguidelines sentence based on a

17   number of factors, we believe that those very same factors

18   militate in favor of a guidelines sentence.

19          THE COURT:  I appreciate that.

20          I think.

21          MR. RAY:  Your Honor, if I just may, and I will not be

22   repetitive, I would ask your Honor to do a few things.

23          THE COURT:  We have been so over this, but go ahead.

24   I don't think -- whatever.  Go ahead.

25          MR. RAY:  I think --

C9KMBRAS                      Sentence

1           THE COURT:  I get it.  I get the record, counsel.  I

2     get your arguments.  I've read everything.  I know the

3     government's position.  I know Mr. Brancaccio's position.  So

4     some of it has been repetitive, but go ahead.

5           MR. RAY:  I would ask your Honor to reject the

6     statement that Mr. Brancaccio assisted others in distributing

7     kilogram quantities of narcotics because I do not believe --

8           THE COURT:  You know very well we are not having a

9     hearing now.  This is just oral argument of you and oral

10    argument of counsel.  I am not finding new facts because you

11    both indicated we don't need to have a Fatico hearing.

12          MR. RAY:  Fair enough.

13          THE COURT:  Right?

14          MR. RAY:  That is fair.

15          I would ask your Honor further to, as I argued,

16    although it was still stated.  You know, I appreciate there is

17    not a Fatico hearing, but then the government stands up and

18    then argues things that if I don't say something it's as if I

19    conceded it.  All I'm trying to do is make a record to say --

20          THE COURT:  You don't concede it.

21          MR. RAY:  If your Honor is going to rely on it.

22          THE COURT:  I don't want to stop you from making your

23    record.  Tell us what you don't concede.

24          MR. RAY:  The second one that I would ask your Honor

25    not to rely on was the statement that Mr. Brancaccio threatened

1   the victim with a gun.  As I argued, he is admitting that he

2   threatened the victim with bodily harm.  He did not threaten

3   him with a gun.

4          Third, while it is technically true that

5   Mr. Brancaccio possessed, because it was his home, everything

6   that was in the home, as we made the point, and, your Honor, I

7   think, made the record, our position was that the drugs that

8   were in the home were not Mr. Brancaccio's, but they were his

9   brother's.  A glib argument, well, he was possessing these

10  drugs is factually not accurate and I need to say so.  That's

11  the third point.

12         On the characterization, I'll just leave it with this.

13  Our position is contrary to the government's argument, which is

14  what justifies a substantial variance.  Mr. Brancaccio was a

15  peripheral figure in this case.  Thank you.

16         THE COURT:  I am going to adopt the findings of fact

17  in the presentence report, unless there are further objections

18  from defense counsel.

19         MR. RAY:  No, your Honor.  There was a thing I did not

20  mention.  In fairness, I should have done it before.  It was

21  not in response to counsel for the government.  But one of the

22  enhancements is the fact that Mr. Brancaccio committed the

23  instant offense while on a form of supervision, which was

24  parole.  I think it is consistent with my prior arguments, but

25  just to note it here, remember, that's more of a technical

C9KMBRAS                    Sentence

1   distinction because of the unusual anomalous aspect of a RICO

2   case.

3           THE COURT:  But he acknowledged that he did.

4           MR. RAY:  He does.  It's true and the enhancement is

5   appropriate.  But the context is, of course, if the instant

6   offense is all the way back to the '80s, the offense is

7   committed continuously from the '80s to 2011.  That's the

8   point.

9           THE COURT:  Any other further objections from you,

10  Mr. Brancaccio?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  How about from the government?

13          MR. CHUNG:  None, your Honor.

14          THE COURT:  Here I am going to preview the sentence

15  and then I am going to impose the sentence.

16          The submissions have been both extensive and very

17  professionally done both by counsel and Mr. Brancaccio and the

18  letters as well.

19          I intend to impose a sentence of custody of 165

20  months.  The offense level is 32.  The criminal history

21  category is VI.  The statutory maximum is 240 months.  That's

22  going to be followed by three years of -- by the way, I am

23  going to make a recommendation that Mr. Brancaccio be in a

24  facility where he can get both drug treatment and mental health

25  treatment and that he get that treatment in such a facility.

C9KMBRAS                        Sentence

1              MR. RAY:  Would your Honor recommend further, you note

2        his family is here and present in the courtroom and that he has

3        an 11-year-old son.  Obviously, it would be helpful if the

4        Bureau of Prisons could find their way in their discretion with

5        a recommendation from your Honor that it be a facility near the

6        New York City area.

7              THE COURT:  I will make that recommendation as well.

8              MR. RAY:  Thank you.

9              THE COURT:  That is going to be followed by three

10       years of supervised release subject to the mandatory conditions

11       that he not commit another federal, state, or local crime and

12       that he not illegally possess a controlled substance, that he

13       not possess a firearm, dangerous weapon or destructive device,

14       and that he refrain from any unlawful use of a controlled

15       substance.  He will be required to submit to one drug test

16       within 15 days of placement on supervised release and at least

17       two unscheduled drug tests thereafter as may be directed by the

18       probation officer.

19              In addition, he is required to comply with what are

20       called standard conditions 1 through 13, plus these, that he be

21       supervised in his district of residence, that he report to

22       probation within 48 hours of release from custody, that

23       throughout the term of supervised release he participate in a

24       program approved by the probation office for substance abuse

25       and that program shall include testing to determine whether he

C9KMBRAS                    Sentence

1   has reverted to the use of drugs or alcohol.

2          He may be required to contribute to the cost of

3   services rendered as by a copayment in an amount to be

4   determined by the probation officer based on such factors as

5   availability of third-party payment and ability to pay.

6          In addition, throughout the term of supervised

7   release, he be required to participate in weekly therapeutic

8   counseling supervised by a license therapist and that is to

9   include one individual session per week and at least one group

10  session per week.  And that may also be subject to the

11  requirement that he contribute to the cost of services rendered

12  as by a copayment in an amount to be determined by the

13  probation officer based on such factors as ability to pay and

14  availability of third-party payment.

15         I do not intend to impose a fine because none is

16  recommended in the materials from probation, nor do I intend to

17  impose restitution.  There does not appear a victim within the

18  meaning of 18 United States Code Section 3663 or 3663(a).  I do

19  intend to impose a $100 special assessment which is mandatory

20  and due immediately under 18 U.S.C. Section 3013.

21         Briefly, the reasons for the sentence, the offense

22  level is 32, the criminal history category is VI.  The

23  guideline range would be 210 to 262, but because of the

24  statutory maximum it's 210 to 240 months.  And for the reasons

25  I stated before, I believe that this sentence is appropriate,

C9KMBRAS                    Sentence

1   given all the factors at 18 United States Code Section 3553(a),

2   and I don't feel one can or should parse any particular factor.

3   It's all of those factors, as I have been trying to explain

4   here this morning, that go into this sentence.  So there is no

5   mathematical way precisely to arrive at this sentence.  But I

6   do believe that the sentence is important, given the nature and

7   circumstances of the offense, the history and characteristics

8   of the defendant, the need to reflect the seriousness of the

9   offense, to promote respect for the law, to provide a just

10  punishment, to afford adequate deterrence to criminal conduct,

11  to protect the public and to provide Mr. Brancaccio with needed

12  educational and vocational training and, in particular, as I've

13  outlined, medical care or other correctional treatment in the

14  most effective manner.

15          Unless counsel has anything additional to add, that's

16  the sentence I am going to impose.

17          MR. RAY:  I don't think so.  I believe there are open

18  counts because of the fact --

19          THE COURT:  We will get to that.

20          MR. RAY:  Thank you.

21          THE COURT:  Mr. Brancaccio, anything you want to add

22  before I impose the sentence?

23          THE DEFENDANT:  Your Honor, I take responsibility for

24  what I did, but I just feel it's not fair and just.  14 years?

25  What can I say?

1      THE COURT:  Anything else from the government?

2      MR. CHUNG:  No, your Honor.

3      THE COURT:  I would ask Mr. Brancaccio, respectfully,

4  to please stand and I am going to impose the sentence.

5      Having considered the factors at 18 United States Code

6  Section 3553(a), it is my judgment that you be committed to the

7  custody of the Bureau of Prisons to be imprisoned for a term of

8  165 months followed by three years of supervised release,

9  including the mandatory and special conditions that I mentioned

10 before and incorporate here by reference.  I'm not imposing a

11 fine.  I'm not imposing restitution for the reasons mentioned.

12 I am imposing a $100 special assessment which is due

13 immediately.

14     As for the reasons for this sentence, I think I have

15 tried to articulate them as best I can throughout today's

16 sentencing proceeding and I incorporate that entire discussion

17 here by reference.

18     Does either counsel know of any legal reason, starting

19 with the government, why the sentence should not be imposed as

20 so stated?

21     MR. CHUNG:  No, your Honor.

22     MR. RAY:  No, your Honor.

23     THE COURT:  I hereby order the sentence to be imposed

24 as so stated.

25     Mr. Brancaccio, to the extent that you have not

1   already waived your appeal rights, now I'm talking about the

2   plea agreement dated April 25, 2012, which does in fact include

3   a series of waivers of appeal rights, specifically it says that

4   you would not file a direct appeal, you waive the right to file

5   a direct appeal.  You also waive the right to bring what's

6   called a collateral challenge, including, but not limited to,

7   applications under 28 United States Code Sections 2255 and

8   2241.  And it also includes a waiver of your right to seek a

9   sentence modification pursuant to 18 U.S.C. Section 3582(c) of

10  any sentence that's within or below the stipulated guideline

11  range of 210 to 240 months.  Of course, this sentence is

12  significantly below that guideline range and so these waivers

13  of appeal apply.  But to the extent that there may be some

14  other right remaining to appeal, I notify you that you have

15  that right to appeal.  If you are unable to pay the cost of an

16  appeal, you have the right to apply for leave to appeal in

17  forma pauperis.  If you request, the clerk of the Court will

18  prepare and file a notice of appeal on your behalf immediately.

19          Do you understand those appeal rights?

20          THE DEFENDANT:  Yes, sir.  I'd like to do so.  I would

21  like to put in an appeal.  Anything that I can do.

22          THE COURT:  You can discuss that with Mr. Ray.  There

23  are, as I say, these waivers of appeal that you have agreed to,

24  but you can discuss with Mr. Ray the issues about appeal.

25          MR. RAY:  I should note for the record that I believe,

1    speaking as a lawyer, and Mr. Brancaccio's lawyer, that those

2    waiver provisions do apply.  But, of course, nothing prevents

3    Mr. Brancaccio, if he chooses, to file a notice of appeal.  We

4    will deal with the consequences of that later on.

5         The record should reflect the fact that I have advised

6    him that those waivers do in fact apply, and I agree with the

7    Court that the sentence imposed today is below the stipulated

8    guidelines range and that's the reason why it applies.

9         THE COURT:  Does the government have any open counts

10   or matters it wants to resolve?

11        MR. CHUNG:  Yes, your Honor.  The government moves to

12   dismiss all open counts against the defendant in this case.

13        THE COURT:  I'll grant that application.

14        Starting with the government, did you want to add

15   anything to today's proceeding?

16        MR. CHUNG:  No, your Honor.

17        THE COURT:  How about the defense?

18        MR. RAY:  No, your Honor.

19        THE DEFENDANT:  No, sir.

20        THE COURT:  I think that concludes our work for today.

21        Mr. Brancaccio, I wish you the best of luck going

22   forward.  Thanks very much.

23                            o0o

24

25