UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                  :
                                           :          11 Cr. 12 (RMB)
            - against -                    :
                                           :          **DECISION & ORDER**
JOHN BRANCACCIO,                           :
                        Defendant.         :
------------------------------------------------------------x

  Having reviewed the record herein, including without limitation: **(1)** Defendant John Brancaccio's ("Brancaccio") motion, filed by defense counsel Ellen B. Resnick and dated October 28, 2020, requesting the Court to "modify his sentence to time served and immediately release him to begin a three-year term of supervised release or, alternatively, home confinement with whatever conditions this Court deems appropriate." See Def. Mot. at 1. Brancaccio, who is 53 years old, advises, among other things: that his medical conditions include hypertension, hyperlipidemia (high cholesterol), obesity, and "borderline diabetes" which "place him at risk of suffering serious, if not fatal complications were he to contract the [COVID-19] virus." Id. Brancaccio also claims that his prison facility, FCI Gilmer in West Virginia, "has seen a very recent spike in coronavirus infections among inmates." Id. Defense counsel submits Brancaccio's BOP medical records (as Exhibit C) which reflect his physical examinations at FCI Gilmer between July 2018 and May 2020; **(2)** the Government's opposition, dated December 21, 2020, contending that: "defendant's release would pose a danger to the community;" and "the Section 3553(a) factors weigh heavily in favor of rejecting defendant's request for a reduction of his sentence." See Gov't Opp. at 4. The Government argues that Brancaccio's "entire adult life has been marked by a steady stream of criminal convictions resulting from his decades-long participation in narcotics trafficking and organized crime;" and that "[i]t is apparent from his criminal records, the nature of the instant offense, and his record while in prison that he poses a substantial risk of recidivism." Id.; and **(3)** Brancaccio's reply, dated January 5, 2021, contending that: "a careful review of Mr. Brancaccio's criminal history does not suggest that there is a risk of dangerousness or recidivism if he were released early;" and that "the

1

implications of the COVID-19 pandemic at FCI Gilmer have grown more dire for Mr. Brancaccio since our motion was filed on October 28, 2020." See Def. Reply at 1, **the Court hereby respectfully denies Brancaccio's motion for compassionate release, as follows:**[1]

## I. Background

On April 26, 2012, Brancaccio pled guilty to participating in a racketeering enterprise in violation of Title 18, Section 1962(c). See Sept. 20, 2012 Sentencing Tr. at 5:2-8; Gov't Opp. at 3. Brancaccio's Sentencing Guidelines range was 210 to 262 months with a statutory maximum of 240 months; his criminal history category was VI; and his offense level was 32. See Sept. 20, 2012 Sentencing Tr. at 5:9-11; 44:21-24. The Court sentenced Brancaccio to 165 months' incarceration to be followed by 3 years supervised release. See Sept. 20, 2012 Judgment.

FCI Gilmer in West Virginia is described as a "medium-security federal correctional institution with an adjacent minimum-security satellite camp." See FCI Gilmer, BOP, https://www.bop.gov/locations/institutions/gil/; see also Def. Mot. at 1. Brancaccio appears to be housed in the medium-security facility. See Gov't Opp. at 2; Def. Mot. Ex. A.

As of January 14, 2021, Brancaccio had served 120 months (10 years) or 73% of his 165-month sentence. See Def. Mot. Exs. A-B. He is scheduled to be released from prison on November 17, 2022. Id. Brancaccio appears to become eligible for home detention on May 17, 2022. See Def. Mot. Ex. A at 2.

## II. Legal Standard

18 U.S.C. § 3582(c)(1)(A) provides in part:

[T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

18 U.S.C. § 3582 "allows a court to reduce a term of imprisonment or supervised release after considering the factors set forth in 18 U.S.C. § 3553(a) and finding that 'extraordinary and compelling reasons warrant such a reduction.'" *See United States v. Turnbull*, 2020 WL 5089439, at *1 (S.D.N.Y. Aug. 28, 2020); *see also United States v. Sturgis*, 2020 WL 7063359, at *3 (W.D.N.Y. Nov. 24, 2020).

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community . . .," and "the reduction is consistent with this policy statement."

"[I]n deciding a compassionate release motion brought directly by a prisoner . . . [t]he court [] looks to § 1B1.13 for guidance in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020). However, "a district court's discretion in this area – as in all sentencing matters – is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). District courts are "free[] . . . to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.*

### III. Findings

The Court's findings are as follows:

1. Brancaccio has exhausted his administrative remedies. *See United States v. Burman*, 2020 WL 3182766, at *2 (S.D.N.Y. June 13, 2020); *United States v. Gray*, 2020 WL 3050730, at *3 (S.D.N.Y. June 8, 2020). On April 30, 2020, Brancaccio requested compassionate release from the BOP due to his medical conditions. See Gov't Opp. at 3. The Warden of FCI Gilmer denied Brancaccio's request on May 12, 2020. On June 12, 2020, Brancaccio appealed the Warden's denial and on June 24, 2020, the Warden denied Brancaccio's appeal. See Def. Mot. Ex. B at 3-4.

2. Brancaccio's BOP medical records reflect that he has the following medical conditions: hypertension, hyperlipidemia (high cholesterol), obesity, and prediabetes. See e.g. BOP Medical Records Ex. C at 1-5; Gov't Opp. at 4.

3. The Centers for Disease Control and Prevention (CDC) has designated hypertension as "associated with increased illness severity and adverse outcomes from COVID-19." *See United States v. Gotti*, 2020 WL 7706828, at *3 (S.D.N.Y. Dec. 29, 2020); People with Certain Medical Conditions, CDC, https://www.cdc.gov/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated on Dec. 29, 2020). Brancaccio is receiving prescription medications for his hypertension. See Gov't Opp. at 4; BOP Medical Records Ex. C at 1, 5.

4. "Hyperlipidemia (high cholesterol) has proven to be one of the most common comorbidities in COVID-19 related fatalities." *See United States v. Hurst*, 2020 WL 7490232, at *3 (W.D. Pa. Dec. 21, 2020). Brancaccio is receiving prescription medications for hyperlipidemia. See Gov't Opp. at 4; BOP Medical Records Ex. C at 1, 5.

5. The CDC has designated obesity, defined as a body mass index (BMI) of between 30 kg/$m^2$ and 40 kg/$m^2$, as increasing the risk of severe illness from COVID-19. See People with Certain Medical Conditions; *see also United States v. Nwankwo*, 2020 WL 7335287, at *2 (S.D.N.Y. Dec. 14, 2020). Brancaccio's BOP medical records show that he has a BMI of 34.9 kg/$m^2$. See BOP Medical Records Ex. C at 5; Def. Mot. at 8. The Government "acknowledges that the defendant has proffered a basis for the Court to find that extraordinary and compelling reasons for release exist" because "[u]nder CDC guidance, the defendant's obesity renders him at higher risk of suffering serious complications should he contract COVID-19." See Gov't Opp. at 4.

   Courts in this district have found that obesity alone may not warrant compassionate release. *See United States v. Pena*, 2020 WL 7408992, at *6 (S.D.N.Y. Dec. 17, 2020) ("[defendant's] obesity . . . alone is not enough to warrant compassionate release"); *United States v. Kerrigan*, 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) ("[defendant] has failed to articulate an extraordinary and compelling reason . . . [T]he medical issues he [] identifies [which included obesity] are not severe enough to warrant compassionate release"); *see also United States v. Morales-Ortiz*, 2021 WL 65477,

4

at *5 (E.D. Pa. Jan. 7, 2021) ("In general, courts have been reluctant to grant compassionate release based solely on obesity.").

6. Prediabetes/borderline diabetes does not appear to be a medical condition which creates an increased risk of severe illness from COVID-19. See People with Certain Medical Conditions; *see also United States v. Rodriguez*, 2020 WL 7321394, at *2 (S.D.N.Y. Dec. 10, 2020) ("the CDC's current recommendations do not recognize a COVID-19 risk factor related [to] prediabetes"); *United States v. Bouyagian*, 2020 WL 5077405, at *1 n.1 (S.D.N.Y. Aug. 27, 2020) ("The CDC . . . does not address the increased risk posed to those with borderline diabetes, if any").

7. As of January 14, 2021, there were 68 inmates at FCI Gilmer with active COVID-19 cases out of a population of 1,451 inmates. See COVID-19: Coronavirus, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 14, 2021). Courts have recently found that the number of COVID-19 cases at FCI Gilmer does not constitute a "serious outbreak of COVID-19 infections." *See e.g. United States v. Powell*, 2021 WL 50333 (N.D. Ind. Jan. 5, 2021); *United States v. Blanks*, 2021 WL 37633, at *3 (W.D. Pa. Jan. 4, 2021) (70 active cases as of January 4, 2021).

8. According to the Government, FCI Gilmer "has fully implemented . . . the BOP's plan" to respond to COVID-19. See Gov't Opp. at 11. According to Brancaccio's reply, "[i]nmates at FCI Gilmer . . . have recently been confined to their cells under lockdown measures" in order to "reduce the rate of infection." See Def. Reply at 3.

## IV. Analysis

The Court denies Brancaccio's motion for compassionate release because, among other things: (i) Brancaccio continues to pose a danger to the community; and (ii) the 18 U.S.C. § 3553(a) sentencing factors weigh against Brancaccio's release. *See United States v. Roney*, 2020 WL 6387844, at *2 (2d Cir. Nov. 2, 2020) ("We need not decide whether [defendant] has proffered an extraordinary and compelling reason that warrants his release under 18 U.S.C. § 3582(c)(1)(A)(i) because . . . release is nevertheless unwarranted upon consideration of the § 3553(a) factors."); *United States v. Hardy*, 2020 WL 4505614, at

5

\*1 (S.D.N.Y. Aug. 4, 2020) ("The Court need not determine whether [] extraordinary circumstances exist because it denies [defendant's] motion on the separate grounds that he presents a 'danger . . . to the community.'").

### (1) Danger to the Community

The Court concludes that Brancaccio continues to pose a danger to the community based upon the instant crime and his criminal history. This conclusion outweighs other arguments which may favor early release. *See United States v. Lika*, 2020 WL 2766049, at \*3 (S.D.N.Y. May 28, 2020) ("the danger Defendant presents to the community outweighs the [health] risks"); *United States v. Belle*, 457 F.Supp.3d 134, 140 (D. Conn. May 5, 2020) ("Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, the individual's danger to the community may ultimately outweigh any health concerns").

Dangerousness to the community here is based upon a number of factors:

For one thing, Brancaccio pled guilty to a charge of racketeering which included acts of cocaine trafficking, marijuana trafficking, extortion, and operating an illegal gambling business or sports betting. See Sept. 20, 2012 Sentencing Tr. at 5:2-8. Brancaccio's crime arose out of his long-time association with organized crime. See Gov't Opp. at 1; Sept. 20, 2012 Sentencing Tr. at 7:2-4, 9:5-6, 25:16-17. Brancaccio's extortion act was violent – he and his co-conspirators threatened a victim with a gun. See Gov't Opp. at 2; July 13, 2012 Gov't Sentencing Memo. at 3.  Brancaccio's narcotics trafficking involved large amounts of drugs, i.e. 10 kilograms of cocaine and 999 kilograms of marijuana. See Sept. 20, 2012 Sentencing Tr. at 5:11-14. According to the Government, when Brancaccio was arrested in this case, law enforcement found, among other things, 80 grams of cocaine, a 12-gauge shotgun, shotgun shells, a loaded .40 caliber Glock handgun, and a rubber-handled machete. See Sept. 20, 2012 Sentencing Tr. at 15:6-13; Gov't Opp. at 2.

**Second**, Brancaccio appears to be a recidivist who has not been deterred from unlawful behavior. As the Government points out, Brancaccio sustained 11 criminal convictions prior to pleading guilty in

6

this case. See Gov't Opp. at 2, 12. At sentencing, the Court described Brancaccio's "extensive" prior criminal history which included, among other things, assault with intent to cause injury with a weapon, criminal sale of a controlled substance, criminal sale of marijuana, and disorderly conduct. See Sept. 20, 2012 Sentencing Tr. at 13:6-13. Brancaccio's defense counsel acknowledged his status as a "career offender." Id. at 14:5-11; July 9, 2012 Def. Sentencing Memo. at 4. "Deterrence historically has not seemed to work with Mr. Brancaccio, but I still think there are general and specific deterrence issues that we need to address. We have to protect the public from further crimes . . ." See Sept. 20, 2012 Sentencing Tr. at 17:23-18:2.

And, Brancaccio had been sentenced to prison even before he was sentenced in this case. In June 1994, for example, Brancaccio was convicted of assault with intent to cause serious injury with a weapon, after he shot two people. Brancaccio was sentenced to 2-6 years' imprisonment and served approximately 54 months. See Gov't Opp. at 2; Sept. 20, 2012 Sentencing Tr. at 15:14-24; July 13, 2012 Gov't Sentencing Memo. at 2, 6. In September 2002, Brancaccio was convicted of criminal possession of marijuana and was sentenced to 9 months' imprisonment. See July 13, 2012 Gov't Sentencing Memo. at 2. And, in September 2005, Brancaccio was convicted of criminal sale of a controlled substance and sentenced to 2-4 years of incarceration. Id. at 1-2; Sept. 20, 2012 Sentencing Tr. at 15:14-21.

On September 4, 2009 – a little more than a year before his arrest in this case – Brancaccio was recorded on a phone call discussing the fact that one of his extortion victims had recently threatened to call the police. "[W]hat I really want to do is some heinous shit . . . somebody needs to get fuckin' hurt bad . . . If he goes to the cops he better worry about my motherfuckin' band of fuckin' gypsies that are gonna kill him." See July 13, 2012 Gov't Sentencing Memo. at 3. And, on December 24, 2009, Brancaccio was recorded on a phone call discussing his plans to rob a pharmacy. Id. at 4.

Courts have denied compassionate release on the grounds of dangerousness based upon facts comparable to and/or less severe than those in this case. In *United States v. Kupa*, 2020 WL 2404856, at *1-2 (E.D.N.Y. May 12, 2020), the court denied compassionate release to a defendant with obesity and

high blood pressure who "supplied multi-kilograms amounts of cocaine and marijuana to . . . a member of [an organized] crime family." The court stated: "The defendant is a career criminal . . . and the significant prison term imposed . . . reflected the defendant's extensive criminal history and the need to protect the public by incapacitating a defendant who was intimately involved in narcotics trafficking . . . an offense which creates a significant risk of addiction and death from overdose." *Id.*

And, in *United States v. Montevecchi*, 2020 WL 3051335, at *1-2 (S.D.N.Y. June 8, 2020), the court denied compassionate release to a defendant with heart disease who pled guilty to racketeering, including extortion, on dangerousness grounds because the defendant "committed a serious crime while an active participant in [] organized crime;" "has a history of nefarious activity similar to his present offense;" and "could endanger the community upon release." *See also United States v. Tranese*, 2021 WL 25371, at *2 (S.D.N.Y. Jan. 4, 2021); *United States v. Bolino*, 2020 WL 4749807, at *6 (E.D.N.Y. Aug. 17, 2020); *United States v. Donato*, 2020 WL 3642854, at *2 (E.D.N.Y. July 6, 2020).

The Court is also concerned that Brancaccio has been sanctioned three (3) times by the BOP since the beginning of his incarceration in this case on January 20, 2011. See Gov't Opp. at 12. His violations include: "destroying property" and "being unsanitary or untidy" in December 2011; "possession of homemade intoxicants" in October 2015; and "being absent from assignment" in March 2017. See BOP Chronological Disciplinary Record Ex. E. *See United States v. Rosa*, 2020 WL 5774909, at *2 (S.D.N.Y. Sept. 28, 2020) ("[Defendant's] prior criminal history and disciplinary record demonstrate that he would be a danger to his community . . . Defendant was convicted of narcotics trafficking . . . [and] Defendant has received several disciplinary sanctions while incarcerated"); *United States v. Slutzkin*, 2021 WL 77139, at *3 (D. Conn. Jan. 8, 2021) ("The defendant's behavior in prison demonstrates a continued need to protect the public and a lack of respect for the law.").

**(2) The 18 U.S.C. 3553(a) Factors Weigh Against Granting Compassionate Release**

Early compassionate release in this case would be inconsistent with and contrary to the goals of sentencing, which include the need "to reflect the seriousness of the offense, to promote respect for the

law,[] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *See United States v. Harris*, 2020 WL 5801051, at *3 (S.D.N.Y. Sept. 29, 2020); see also Sept. 20, 2012 Sentencing Tr. at 45:5-11.

For one thing, Brancaccio has 12 criminal convictions, culminating in the conviction in this case. See Gov't Opp. at 7. Requiring Brancaccio to complete his sentence is necessary to provide just punishment for the offense and to afford adequate specific or general deterrence to criminal conduct. See Sept. 20, 2012 Sentencing Tr. at 17:23-18:2.

In *United States v. Bolino*, 2020 WL 4749807, at *6 (E.D.N.Y. Aug. 17, 2020), the court denied compassionate release to a defendant convicted of extortion stating: "Nor could defendant's motion survive the application of the relevant sentencing factors. Defendant has a long history with . . . organized crime [] and his extensive, violent criminal history proves that prison has not deterred his unlawful predilections . . . I cannot overlook defendant's pattern of reoffending, despite significant incarceration . . . . To reduce defendant's sentence would be diminishing his transgressions and undermining the goals of [his] original sentence, among them, the need to dispense adequate punishment for defendant's multiple acts throughout his criminal career and to deter others from emulating his behavior." *See also United States v. Hall*, 2020 WL 4896667, at *2 (S.D.N.Y. Aug. 20, 2020) ("[Defendant's] crimes were of the most serious nature and require substantial punishment. Indeed, the sentence . . . that the Court imposed already represents a downward departure from the Sentencing Guidelines recommendation. Any further reduction is thus unwarranted. [Defendant's] completion of [his] sentence is necessary to afford adequate deterrence to the defendant.").

Second, a sentence reduction would not adequately protect the public from further crimes of Brancaccio. *See United States v. Kupa*, 2020 WL 2404856, at *1-2 (E.D.N.Y. May 12, 2020); *United States v. Montevecchi*, 2020 WL 3051335, at *1-2 (S.D.N.Y. June 8, 2020); *see also* discussion at pp. 6-8 *supra*.

9

Third, Brancaccio's conviction and sentence were the culmination of his activities as an associate of organized crime. See Sept. 20, 2012 Sentencing Tr. at 7:2-4, 9:4-7, 25:16-17. Brancaccio's racketeering conviction was a serious one. Id. at 2:14-15. According to the Government: "In approximately the 1990s or 2000, Brancaccio began working . . . with . . . a made member of the Gambino Organized Crime Family" and "began selling cocaine and sharing proceeds with other Gambino Organized Crime Family members." See Gov't Opp. at 1. Brancaccio, along with other organized crime associates, took part in various racketeering activities, including, among other things, extortions and illegal gambling. "On one occasion, Brancaccio and others threatened an extortion victim with a gun." Id. at 1-2. Requiring Brancaccio to complete his term of imprisonment is important to reflect the seriousness of Brancaccio's offense and to promote respect for the law.

In *United States v. Tranese*, 2021 WL 25371, at *2 (S.D.N.Y. Jan. 4, 2021), the court denied compassionate release to a defendant who pled guilty to narcotics trafficking in connection with organized crime and had one year left of incarceration, stating: "In light of the seriousness of his offense, his already recognized health concerns even in light of the pandemic do not justify his release. The [] term of imprisonment I imposed was – and remains – necessary to 'reflect the seriousness of the offense' [and] 'promote respect for the law.'" *See also Montevecchi*, 2020 WL 3051335, at *2 (denying compassionate release to an "active participant" in organized crime, convicted of racketeering and stating: "Reducing [defendant's] sentence beneath his already-below-guidelines sentence would fail to 'reflect the seriousness of the offense' [and] 'promote respect for the law'"); *United States v. Hoopes*, 2020 WL 6889211, at *5 (E.D. Pa. Nov. 24, 2020) (denying compassionate release to a defendant convicted of extortion, stating: "[Defendant] has failed to show how releasing him before he serves the full term of his sentence would align with the statutory sentencing factors, notably the seriousness of the offense [and] the need to promote respect for the law").

At the same time, the Court acknowledges and commends Mr. Brancaccio's efforts at utilizing the resources available to him in prison, including completion of the Drug Abuse Education Course and over

200 hours in educational classes. See Def. Mot. at 13-14; Ex. D. The Court strongly encourages Mr. Brancaccio to continue to pursue these programs and other programs that would aid in his rehabilitation. *See United States v. Carter*, 2020 WL 3051357, at *3 n.7 (S.D.N.Y. June 8, 2020).

## V.     Conclusion & Order

For the reasons set forth above, Defendant's motion for compassionate release [Dck. #1019] is denied. Defense counsel's request to file Exhibit C (BOP medical records) under seal is granted. *United States v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

Dated: New York, New York
       January 14, 2021

_____
          **RICHARD M. BERMAN, U.S.D.J.**